IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **M.A.**, individually and on behalf of **Z.A.**, a minor,<br><br>         Plaintiffs,<br>    v.<br><br>**UNITED HEALTHCARE INSURANCE**, **UNITED BEHAVIORAL HEALTH**, and **KAISER ALUMINUM FABRICATED PRODUCTS WELFARE BENEFIT PLAN**,<br><br>         Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:21-CV-00083-JNP-DBP<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Dustin B. Pead |

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"), 29 U.S.C. § 1185a. Plaintiffs' complaint alleges causes of action for recovery of benefits under Section 1132(a)(1)(B) of ERISA ("ERISA Claim") and violation of the Parity Act ("Parity Act Claim"). On October 28, 2022, United Healthcare Insurance ("United"), United Behavioral Health ("UBH"), and Kaiser Aluminum Fabricated Products Welfare Benefit Plan ("Plan") (collectively, "Defendants"), moved for summary judgment on both claims. Plaintiffs moved for summary judgment on both claims three days later.

### BACKGROUND[1]

Plaintiffs allege Defendants wrongfully denied benefits under the ERISA-governed Plan. ECF No. 2. At all relevant times, M.A. was a Plan participant and his daughter Z.A. was a Plan

---

[1] Defendants filed an administrative record with the court under seal. *See* ECF No. 49. The parties cite to this record in their briefs with pagination of either United-Kaiser 000001-012225 or R.1-R.9185 and United-Kaiser_009173-012225. The court cites the record as pages 1-12225 of the administrative record ("AR").

beneficiary, while Kaiser was the Plan administrator and United was the designated claims administrator. ECF No. 2, ¶ 3; AR 12167, 12175. Plaintiffs obtained mental health care for Z.A. at BlueFire Wilderness Therapy ("BlueFire") between June 4, 2018 and August 8, 2018 and at Uinta Academy ("Uinta"), a residential treatment center ("RTC"), between August 9, 2018 and August 27, 2019. ECF No. 2, ¶ 4. Plaintiffs claim Defendants' wrongful denial of benefits for this care caused them to incur $230,000 in unreimbursed medical expenses. ECF No. 2, ¶ 61.

### The Plan

The Plan offers benefits for medically necessary covered health services. AR 12168, 12172-73. For a treatment to be medically necessary under the Plan, it must correspond to the patient's needed level of care. AR 12171, 12173. The Plan gives Defendants discretion to interpret the Plan's terms and make factual determinations regarding Plan coverage. AR 12162.

The Plan excludes coverage for experimental or unproven services. AR 12123-24. United created a Wilderness Therapy Behavioral Clinical Policy ("Policy") that categorized wilderness therapy as an unproven treatment excluded from Plan coverage. AR 9168-72. United reviewed Plaintiffs' claim for Plan benefits for Z.A.'s care at BlueFire under this Policy. AR 4784-85. Unlike wilderness therapy, RTC care is medically necessary under the Plan so long as the insured requires 24/7 treatment for symptoms that interfere with her safety or the safety of others or would prevent treatment at a less intensive level of care. AR 9215-16. A Plan participant must obtain prior authorization for out-of-network RTC care to have that treatment covered. AR 12074, 12100. United used its 2018 and 2019 level of care guidelines to review Plaintiffs' claim for benefits for Z.A.'s treatment at Uinta. AR 4786-87, 9203-37.

### Z.A.'s Condition and Treatment

Z.A.'s mental health declined in sixth grade. AR 178. In seventh grade, her parents

learned she was engaging in self-harm and writing suicidal thoughts online. AR 178, 256. The next year, Z.A.'s situation worsened. She began using drugs and alcohol and was hospitalized repeatedly for attempted overdoses and other self-harm. AR 179-80, 202, 216. Z.A. became so disruptive at school that her assistant principal identified her need for intensive mental health support. AR 179-83, 201-10, 212, 215, 256. Z.A.'s parents sought support for her, and she began counseling in seventh grade. Her therapist, Dr. Pat Sharp, diagnosed her with persistent depression and generalized anxiety. AR 178-80, 218.

After a year of counseling with Dr. Sharp, Z.A. was transferred to a new therapist, Dr. Jeanette Higgins, who diagnosed Z.A. with "depressive disorder, a parent-child relationship problem, social exclusion or rejection, and a provisional diagnosis of a bipolar and related disorder." *Id.* In eighth grade, Z.A. began an intensive outpatient counseling program, but her situation worsened. Z.A.'s school suspended her indefinitely because the district could not meet her mental health needs. AR 139, 181. Dr. Higgins then recommended residential treatment, which she believed necessary based on Z.A.'s need for an intensive intervention that included continuous monitoring. AR 218.

Z.A.'s parents admitted her to BlueFire on June 4, 2018. AR 89. There, Z.A. saw therapists Shannon Kerrick and Amanda Stone, who diagnosed her with "major depressive disorder and generalized anxiety disorder, as well as parent-child relational problems." AR 139-40, 171, 254. Kerrick noted that Z.A.'s progress at BlueFire was slow and recommended continuing RTC treatment after leaving BlueFire. AR 254. Z.A. was discharged from BlueFire on August 8, 2018 and admitted to Uinta the following day. AR 552.

At Uinta, Z.A. initially denied her past self-harm and suicide attempts, but she was still monitored every fifteen minutes throughout the night. AR 548-49, 560. This close supervision

continued when her risk level was downgraded slightly in September of 2018, and did not end until sometime after March of 2019. AR 368-69, 372, 260, 279, 302, 308, 1329, 1382. While at Uinta, Z.A.'s treatment notes reflected some positive periods, *see, e.g.,* AR 446, 455, 457, 491, 886, and some negative periods, *see, e.g.,* AR 449-50, 497, 500. During this time, Z.A. was diagnosed with depressive disorder, generalized anxiety disorder, and dependent personality disorder traits. AR 873, 1025. In December of 2018, her treatment team noted "modest improvements in her depression" but continued "high anxiety[,]" and in March of 2019, her treatment team wrote she was in a "preparation stage of change." AR 1342-42. When her progress stalled, however, her treatment team advised continued treatment out of concern that without it, Z.A. would relapse into "worse and dangerous behaviors." *Id.* Z.A. continued treatment at Uinta until she was discharged on August 27, 2019.

### *Denial of Benefits and Prelitigation Appeals — BlueFire*

Plaintiffs did not seek prior authorization for Z.A.'s treatment at BlueFire, an out-of-network provider. AR 47. When Plaintiffs sought coverage, Defendants denied their claim due to non-timely receipt of Z.A.'s medical records. AR 45, 89-90. Plaintiffs submitted an initial internal appeal of this decision, stating they had already provided Z.A.'s medical records. *Id.* On February 14, 2019, Defendants responded upholding their denial of benefits, but on different grounds. Dr. Kenneth Fischer, the reviewing physician, concluded Z.A.'s care at BlueFire was not covered by the Plan due to the wilderness therapy Policy, because BlueFire didn't meet the definition of an RTC, and because Z.A.'s care was not medically necessary. AR 47, 1813-14.

On April 2, 2019, Plaintiffs submitted a second appeal of Defendants' denial of coverage for Z.A.'s care at BlueFire. AR 1789-2774. Along with their appeal, Plaintiffs attached BlueFire's license, peer-reviewed literature contesting Defendants' claim that wilderness therapy

is an unproven treatment, and letters of medical necessity supporting Z.A.'s claim for benefits

from Dr. Alison LaFollette, Dr. Higgins, and other treatment providers and school

administrators. AR 1852-53, 2004-2729, 2767, 2769, 2771, 2773. Defendants denied this second

appeal in a pair of letters dated May 3, 2019 and July 24, 2019. AR 3779-81, 9151-52. These

letters relied on opinions from reviewing physicians Dr. Howard Wong and Dr. Sonya Jones,

both of whom concluded that Z.A. was in wilderness therapy, which was beyond Plan coverage,

and that her treatment at BlueFire was not medically necessary. AR 4786-88. Dr. Wong

specifically noted his conclusion that Z.A. was not "reported to be dangerous to herself or

others[,]" could "look after her day to day needs[,]" and "did not have clinical issues requiring

24/7 monitoring." *Id.* Similarly, Dr. Jones concluded Z.A. had stable "medical and mental

health[,]" could "take care of her needs[,]" and "did not require 24-hour care[.]" AR 9151-52.

Plaintiffs requested an external review of Defendants' claim denials for Z.A.'s treatment

at BlueFire. AR 4781-6905. The external reviewer upheld Defendants' decision. AR 9175-79.

The reviewer based this decision on an unnamed reviewing physician's opinion that Z.A.'s care

at BlueFire was not medically necessary. AR 9178. The external reviewer did not discuss the

wilderness therapy Policy as another justification for denying benefits. *Id.*

### *Denial of Benefits and Prelitigation Appeals — Uinta*

On August 21, 2018, Defendants denied Plaintiffs' claims for Plan coverage of Z.A.'s

treatment at Uinta. AR 195-96. Reviewing physician Dr. Jeffrey C. Uy based this decision on his

conclusion that her treatment there was not medically necessary. *Id.*

Plaintiffs submitted a first appeal of this denial on December 28, 2018. AR 176-644.

Plaintiffs attached letters attesting to the medical necessity of her treatment at Uinta from Dr.

LaFollette and from Shannon Kerrick, her BlueFire social worker. AR 252, 2771. In response,

Defendants reversed their position in part, paying benefits for Z.A.'s treatment between August 9, 2018 and September 21, 2018. AR 1145-46. After that date, Defendants denied continued coverage in a pair of letters dated February 2 and February 8, 2019. AR 1145-46, 1151-52. These letters were written by two reviewing physicians, Dr. Nelson P. Gruber and Dr. Michael Soto, who concluded her treatment was no longer medically necessary as of September 22, 2018. *Id.* Dr. Gruber concluded continued coverage was not appropriate in part because Z.A.'s condition was improving, and she "presented no significant, acute behavioral management challenges[,]" "posed no risk of harm to herself or others[,]" and "had no self harm behaviors[.]" AR 1145-46.

In response, Plaintiffs submitted a second appeal. AR 1118-1784. They included an additional letter of medical necessity from Melissa Keller Adamson, a social worker at Uinta, and Z.A.'s treatment records from Uinta, which reflected recent periods of difficulty that led her to be placed on suicide watch. AR 1128, 1325-26. On May 2, 2019, Defendants again denied coverage in a letter by Dr. Sonya Jones. AR 6915. Plaintiffs requested an external review of Defendants' claim denials. AR 6911-8640. The external reviewer upheld the denial of benefits on medical necessity grounds. AR 9180-86.

After exhausting the Plan's prelitigation appeals, Plaintiffs filed this ERISA action on June 4, 2021. ECF No. 2.

**SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, when both parties move for summary judgment in an ERISA proceeding focusing on a benefit denial claim, the parties have effectively "stipulated that no trial is necessary" and thus "summary judgment is merely a vehicle for

deciding the case." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (citation omitted). In these instances, "the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *Id.* (citation omitted).

If the court's analysis reaches the Parity Act Claim, a different standard is applied. The court affords no special deference to the plan administrator on the legal question of interpretating the Parity Act. *See Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1258 (D. Utah 2016) (citing *Foster v. PPG Indus. Inc.*, 693 F.3d 1226, 1233 (10th Cir. 2012)).

## ANALYSIS

### I. ERISA CLAIM

#### A. STANDARD OF REVIEW

When an ERISA-governed plan gives the administrator discretionary authority to determine benefits eligibility, reviewing courts apply "a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citations omitted). An administrator may also delegate its discretion to a third party, whose denial decisions are then also reviewed under an arbitrary and capricious standard. *Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 926-27 (10th Cir. 2006). Here, the Plan gives United discretion to determine benefit coverage, and United delegated that discretion in part to UBH. AR 12173. As a result, arbitrary and capricious review appears to be the appropriate standard.

Plaintiffs urge the court to instead conduct *de novo* review due to the ERISA procedural deficiencies alleged in their complaint. ECF No. 57, at 2-3. In response, Defendants assert

Plaintiffs' submission of internal appeals is evidence of procedural sufficiency. ECF No. 59, at 4. The court is unpersuaded by this argument. The Plan required Plaintiffs to submit internal appeals before filing any civil action. AR 12141. However, the court need not adjudicate the procedural deficiencies Plaintiffs allege in determining which standard to apply, because the court would grant Plaintiffs summary judgment on their ERISA Claim under either standard.[2] The court will therefore proceed under arbitrary and capricious review.

Claim denials are upheld on arbitrary and capricious review if "reasonable and supported by substantial evidence." *D.K. v. United Behavioral Health*, 67 F.4th 1224, 1235 (10th Cir. 2023) (citing *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)); *see also David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293 (10th Cir. 2023) (quoting *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357-58 (10th Cir. 2009)) ("We define substantial evidence as 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker. Substantial evidence requires more than a scintilla but less than a preponderance.'"). A coverage decision lacks substantial evidence if it rejects and fails to explain why it disagrees with opinions from a plaintiff's medical providers, *D.K.*, 67 F.4th at 21, if it fails to sufficiently explain its conclusions with supportive reasoning and citations to the record, *id.* at 29-30, or if it "is not grounded [on] any reasonable basis[,]" *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007) (citations and internal quotation marks omitted), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

A coverage decision's reasonableness is further judged on whether it resulted from a

---

[2] The court does not overlook Plaintiffs' allegations regarding the procedural insufficiencies in Defendants' claim determinations. It is likely those allegations could support a conclusion that Defendants' claim denials are owed no deference in the court's review. The court simply concludes it need not rely on a determination that *de novo* review is warranted in granting Plaintiffs summary judgment when the outcome would be the same under either standard.

"reasoned and principled process." *D.K.*, 67 F.4th at 18 (quoting *Flinders*, 491 F.3d at 1193). To avoid having their claim denials found arbitrary and capricious, ERISA administrators are obliged to engage in a "full and fair review" of benefits claims and appeals, considering the insured's records and sufficiently explaining their decision. *See* 29 C.F.R § 2560.503-1(h)(2)(iii)-(iv). "ERISA denial letters play a particular role in ensuring full and fair review[,]" so "[a] district court [is] correct to focus its review on the denial letters" when evaluating whether an insurer conducted a full and fair review. *D.K.*, 67 F.4th at 1239. To avoid a finding that a denial of benefits was arbitrary and capricious, ERISA administrators must engage in "reasonable, 'meaningful dialogue'" *in the denial letters they issue*. *Id.* at 1240 (citing *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)). Meaningful dialogue requires denial letters to be "comprehensive and include requests for additional information, steps claimants may take for further review, and specific reasons for the denial." *Id.* at 1239 (citing 29 C.F.R. § 2560.503-1(f)(3); 29 C.F.R. § 2560.503-1(h)(3), (4)). In accordance with ERISA's objective of facilitating meaningful dialogue regarding benefits denials, the court will limit its review of Defendants' claim denials to the information conveyed to Plaintiffs in the prelitigation claims and appeals process.

### B. DENIAL OF PLAN BENEFITS FOR TREATMENT AT BLUEFIRE

Defendants argue their denial of benefits for Z.A.'s care at BlueFire was supported by substantial evidence and not arbitrary and capricious because BlueFire is excluded from Plan coverage as an unproven treatment and Z.A.'s care there was not medically necessary. ECF No. 43, ¶¶ 27-29. The court disagrees. Defendants' interpretation of the Plan, which categorizes wilderness therapy as an unproven treatment, was ambiguous and arbitrarily applied. To the extent Defendants rely on medical necessity to support their coverage decision, the court finds

that decision arbitrary and capricious because Defendants arbitrarily refused to credit or engage with the opinions of Z.A.'s medical providers and then failed to sufficiently explain their reasons for denying benefits, supported by citations to Z.A.'s medical records.

> *1 – Defendants' Claim Denial was Arbitrary and Capricious Because it was Based on an Interpretive Policy that was Ambiguous and Arbitrarily Applied to Z.A.'s Care at BlueFire*

Plaintiffs argue it was arbitrary and capricious for Defendants to deny benefits for Z.A.'s care at BlueFire based on their Wilderness Therapy Policy and urge the court to find that the Policy impermissibly amended the Plan's terms. *See* ECF No. 43, at 33-35. The court agrees. Defendants' denial of benefits was arbitrary and capricious to the extent it was based on their Policy on wilderness therapy programs.

Defendants' wilderness therapy Policy interpreted the term "unproven" to categorically exclude coverage for "wilderness therapy," which the Policy defines. AR 9167-68. Defendants, as insurers, bear the burden to prove by the preponderance of the evidence that a Plan exclusion applies. *Pitman v. Blue Cross & Blue Shield*, 217 F.3d 1291, 1298 (10th Cir. 2000). Because Defendants denied benefits based on an interpretation of the Plan, the court's first duty is to determine if the plan provision at issue is ambiguous. *See Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362 (10th Cir. 2009). "Ambiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Id.* (citation omitted). This court recently found the term "wilderness camp" ambiguous as used in an ERISA-governed plan, but in that case, the plan did not provide any definition for the disputed term. *See Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1172 (D. Utah 2019). On contrast here, the court must determine whether the Policy's definition of wilderness therapy is reasonably susceptible to more than one meaning. It is.

The Policy defines wilderness therapy as "a behavioral health intervention targeted at children and adolescents with emotional, addiction, and/or psychological problems." AR 9167-68. The Policy's definition continues: wilderness therapy "typically involves" a wilderness setting, group living, individual and group therapy, and "educational/therapeutic curricula including back country travel and wilderness living skill development." *Id.* Further, wilderness therapy programs include but are not exclusively "wilderness boot camps," "may be certified . . . and/or licensed[,]" "some" are publicly funded, "typically market" to parents of "troubled teenagers[,]" and can offer a "range of services, including drug and alcohol treatment, confidence building, military-style discipline, and psychological counseling." *Id.* The Policy's definition concludes by listing nine additional terms that also "may" be "wilderness therapy." *Id.*

Besides the headline definition of a "behavioral health intervention" for youth with "emotional, addiction, and/or psychological problems[,]" the Policy entirely defines wilderness therapy in terms of *some*, *may*, and *typically*. The court finds this definition to be reasonably susceptible to more than one meaning. This case itself demonstrates the definition's ambiguity. BlueFire and Uinta provided Z.A. with very similar treatment services—their treatment plans for Z.A. were almost identical. *Compare* AR 139-43 *with* AR 319-23. Despite this, Defendants approved Plan coverage for a portion of Z.A.'s treatment at Uinta while categorically denying benefits for any of her care at BlueFire because they categorize it as "wilderness therapy." *See* AR 1145-16; ECF No. 43, at 25. But the Policy's wilderness therapy definition could just as easily apply to Z.A.'s treatment at Uinta, which is "a behavioral health intervention targeted at children and adolescents with emotional, addiction, and/or psychological problems." The definition's reasonable susceptibility to both BlueFire and Uinta, and Defendants application of the definition only to BlueFire, shows its patent ambiguity.

When faced with an ambiguous term in an ERISA-governed plan, the court's next step is to "take a hard look" at whether Defendants applied the plan's ambiguous language in an arbitrary way. *Scruggs*, 585 F.3d at 1362 (citation omitted). The court limits this review to the Defendants' explanations within the administrative record. *See D.K.*, 67 F.4th at 1241; *Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1173 (D. Utah 2019).

The Policy's ambiguous definition of wilderness therapy could reasonably apply to BlueFire, but it could also reasonably apply to Uinta. Defendants' repeated denial letters did not once apply their Policy's wilderness therapy definition to Z.A.'s care at BlueFire, explaining why it applied there and not to her treatment at Uinta. Defendants simply repeated conclusory assertions that "[Z.A.] attended BlueFire . . . a Wilderness Therapy program[,]" AR 1813, "[t]he facility is a wilderness therapy program[,]" AR 9152, and "[Z.A.] was enrolled in a residential Wilderness Therapy Program, which is not a covered benefit[,]" AR 3780. Moreover, the external reviewer appears to have abandoned this assertion. AR 9175-79.

Due to Defendants' unexplained decided to deny benefits for Z.A.'s care at BlueFire based on their Policy's wilderness therapy definition, which could also reasonably apply to Uinta, their denial of benefits for her time at BlueFire on this basis was arbitrary and capricious.

*2 – Defendants' Denial of Coverage for Z.A.'s Care at BlueFire was Arbitrary and Capricious Because Defendants Disregarded the Opinions of Z.A.'s Medical Care Providers*

Plaintiffs allege that Defendants denied their coverage claim without meaningfully "evaluat[ing] the information Plaintiffs submitted or respond[ing] to Z.A.'s treating professionals' opinions." ECF No 47, at 3. The court agrees and finds Defendants' coverage denial arbitrary and capricious as a result.

Defendants insist nothing requires them to "affirmatively respond to [Plaintiffs']

submissions or to explain precisely why [they] rejected Plaintiffs' arguments or evidence." ECF

No. 52, at 14 (citing *Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x 580, 589–90 (10th

Cir. 2019); *Niedens v. Cont'l Cas. Co.*, 258 F. App'x 216, 220 (10th Cir. 2007)) (internal

quotation marks omitted). But more recent cases have updated this standard. Plan administrators

need not "seek out all treating care givers' opinions found in a claimant's medical records and

explain whether or not the plan administrator agrees with each of those opinions and why."

*David P.*, 77 F.4th at 1312. But when an insured responds to a denial of benefits with opinions

from their medical providers that they required a certain treatment, the insurer cannot "shut their

eyes to readily available information" and "fail[] to engage with the opinions of [Plaintiffs']

treating care givers[.]" *Id.* at *31. Instead, their duty is to "address medical opinions, particularly

those which may contradict their findings. This is the core of meaningful dialogue[.]" *D.K.*, 67

F.4th at 1241.

  In *D.K.*, the court credited an insured's attempts to engage in a meaningful dialogue

about the necessity of care by referencing medical providers' opinions in their prelitigation

appeals and requesting the insurer justify their coverage decision with reference to them. *Id.* at

1240. The court affirmed that the insurer's denial letters were arbitrary and capricious when they

only mentioned those opinions in passing without "wrestl[ing] with medical advice" contrary to

their findings. *Id.* at 1241. A claim denial would be arbitrary and capricious, the court explained,

if the insurer "refused to credit and effectively 'shut their eyes' to the medical opinions of

[Plaintiffs'] treating physicians" and "the depth of an administrator's engagement with medical

opinion would be revealed only when the record is presented for litigation." *Id.*

  This case is similar. Plaintiffs attempted to engage in a "meaningful dialogue" about

Z.A.'s medical needs. When Defendants adopted medical necessity as a reason for denying

benefits, AR 1813, Plaintiffs responded by sharing three letters of medical necessity from Z.A.'s medical providers and requesting Defendants explain their definition with reference to them. Z.A.'s psychiatrist and therapists wrote these letters to share their opinions that she needed "24/7 supervision and continual monitoring[,]" was at serious risk unless she could receive "intensive intervention such as a residential program[,]" and that following her time at BlueFire, Z.A. would need continued residential treatment. AR 2767, 2769, 2771.

Defendants did not have to defer to these opinions, but they couldn't ignore them. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). Yet that is exactly what Defendants did. Responding to Plaintiffs' appeal, one reviewing physician, Dr. Jones, simply concluded Z.A. "was stable from a . . . mental health standpoint" and "did not require 24-hour care." AR 9151-52. Dr. Howard Wong was just as brief, concluding Z.A. "did not need the care provided" and was not in need of residential treatment in part because she "did not have clinical issues requiring 24-hour monitoring." AR 3779-80. The external reviewer stated he had reviewed Plaintiffs' medical necessity letters before asserting she had "no significant ongoing symptoms that required residential treatment[.]" AR 9175-78.

Plaintiffs' medical providers' letters contradicted these conclusions, but Defendants made no attempt to address them as they were obliged to do. Instead, in writing their denial letters, Defendants shut their eyes to the medical opinions that opposed their conclusions while denying benefits based on medical necessity. As a result, their denial of benefits for lack of medical necessity was arbitrary and capricious. *D.K.*, 67 F.4th at 1241.

*3 – Defendants' Denial of Coverage for Z.A.'s Care at BlueFire was Arbitrary and Capricious Because Defendants Denied Benefits Without Sufficient Explanation*

The court finds a third basis to conclude Defendants' denial of coverage for Z.A.'s care at

BlueFire was arbitrary and capricious: Defendants not only disregarded the opinions of Z.A.'s medical providers but failed to sufficiently explain the reasoning behind their claim denials.

When denying benefits claims, plan administrators are required to do more than simply review the record and issue a decision consisting of their conclusions. "Rather, ERISA procedural regulations require the administrator 'provide the claimant with a comprehensible statement of reasons'" for denying benefits. *D.K.*, 67 F.4th at 1242 (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003)). A denial letter that consists of mere conclusory statements, unsupported by reasoning or citations to the record, doesn't provide "any analysis, let alone a reasoned analysis[,]" and is therefore arbitrary and capricious. *See id.*

In their denial letters, Defendants laid out the conclusions that led them to deny Plan coverage for Z.A.'s care at BlueFire. Initially, Defendants denied coverage for non-timely receipt of medical records. AR 45, 89-90. Later, they justified denying benefits based on the Plan's exclusion of unproven treatments, medical necessity, and the level of care BlueFire provided. AR 1813-14. The first reviewing physician, Dr. Fischer, gave no reasoning to support the conclusion that Z.A.'s care was not medically necessary. *Id.*

Defendants' next set of denial letters were just as insufficient. The reviewing physicians denied benefits based on conclusions that Z.A. was "stable from a . . . mental health standpoint, as she was able to participate in activities in the field" and "did not require 24-hour care" or "24/7 monitoring." AR 9152, 3779-80. These letters did not explain the basis for these conclusions, which lacked any supportive reasoning or citations to Z.A.'s medical records. Similarly, the external reviewer wrote Z.A. "had no significant ongoing symptoms" and "had no significant ongoing medical problems that required monitoring." AR 9178. These broad

conclusory statements regarding Z.A.'s health and medical needs were again given without any reasoning, facts, or citations to the record. *Id.*

None of Defendants' denial letters provided Plaintiffs with a comprehensible statement of reasons for the denial of benefits and the differing explanations contained in the various letters were not consistent. For example, Defendants concluded Z.A. did not need RTC-level care on August 8 while at BlueFire, but suddenly did need such care upon her transfer to Uinta on August 9. *See David P.*, 77 F.4th at 1305. Similarly, Plaintiffs might want to know why their insurer decided Z.A. needed RTC treatment at Uinta for 44 days, but not 45 or 46. Defendants provided no answers. While Defendants' denial letters repeatedly assert they considered Z.A.'s records carefully, they didn't truly provide "any analysis, let alone a reasoned analysis[,]" because their denials consisted of conclusory assertions, which lacked explanation regarding what information was relied on, which pieces of Z.A.'s medical records Defendants found persuasive, or what parts of Z.A.'s medical history were in fact reviewed. Defendants' denial letters were arbitrary and capricious for their failure to sufficiently explain their conclusions.

Defendants' briefing argues BlueFire provided mere custodial supervision or that Z.A. simply remained at BlueFire out of convenience, that BlueFire couldn't have provided adequate RTC-level care because they didn't conduct a psychiatric evaluation within 24 hours of Z.A.'s arrival or schedule weekly therapy with a psychiatrist, and that Plaintiffs failed to obtain preauthorization before receiving care at BlueFire, an out-of-network provider. But Defendants conveyed none of these explanations for their denials of benefits to Plaintiffs in their denial letters. As a result, Defendants can't turn to them now. To conclude otherwise would undermine ERISA's purpose, permitting Defendants to deny Plaintiffs "timely and specific explanations[,]" while sandbagging Plaintiffs with after-the-fact rationales "devised for the purposes of

litigation." *D.K.*, 67 F.4th at 1241 (citation omitted). The court's conclusion stands: Defendants' denial letters were arbitrary and capricious for failing to sufficiently explain their conclusions with reasoning supported by citations to the record.

### C. DENIAL OF PLAN BENEFITS FOR TREATMENT AT UINTA

Regarding Defendants' coverage denial for Z.A.'s treatment at Uinta, Plaintiffs raise the same arguments that Defendants denied their benefit claims without meaningfully evaluating and responding to the opinions of Z.A.' medical providers and that their denial letters provided insufficient explanation. The court agrees.

*1 – Disregard of Opinions from Z.A.'s Medical Care Providers*

Defendants arbitrarily refused to credit Plaintiffs' medical providers' opinions that her treatment at Uinta remained medically necessary after September 21, 2018. Plaintiffs' benefit claims and appeals were supported by letters from Z.A.'s medical providers, who believed she needed "24/7 supervision[,]" continued residential treatment, and completion of her Uinta treatment plan to avoid relapsing into "worse and dangerous behaviors" if she left Uinta early. AR 252, 2771, 1341-42. Defendants' denial letters asserted directly contradictory conclusions without addressing any of the opinions of Z.A.'s medical care providers. *See* AR 195-96, 1145-46, 1151-52, 6915, 9180-86.

Again, it is arbitrary and capricious for a plan administrator to deny Plan coverage while arbitrarily refusing to credit Plaintiffs' reliable evidence, including opinions from their medical providers. *David P.*, 77 F.4th at 1312. The meaningful dialogue demanded of ERISA fiduciaries like the Defendants requires them to "*address* medical opinions, particularly those which may contradict their findings." *D.K.*, 67 F.4th at 1241 (emphasis added). Post-hoc rationales defending Defendants' claim denials on medical necessity grounds in court cannot be permitted

when their prelitigation communications with Plaintiffs entirely failed to address the evidence in

the administrative record that contradicted their conclusions about Z.A.'s condition and medical

needs. *Id.* Defendants were not obliged to defer to these opinions. But when Plaintiffs provided

them in their appeals and requested justification of Defendants' claim denials with reference to

them, it was arbitrary and capricious for Defendants to refuse to address them while concluding

Z.A.'s continued care was not medically necessary.

> *2 – Sufficiency of Explanation*

Beyond failing to address the opinions of Z.A.'s care providers, Defendants' denial

letters did not sufficiently explain the reasoning underlying their decisions. Plaintiffs were owed

a comprehensible statement of Defendants' reasons for denying Plan coverage. *D.K.*, 67 F.4th at

1242 (citation omitted). Plaintiffs were denied that explanation when Defendants denied benefits

based on conclusory assertions supported by neither sufficient reasoning nor citations to the

record. *Id.* (citation omitted).

Defendants' first letter denying coverage for Z.A.'s care at Uinta stated she did not need

RTC treatment because was "stable" and "not having any medical problems." AR 195-96. This

conclusion lacked any reasoning or citations to Z.A.'s medical records. Defendants' successive

denial letters concluded she no longer had any "concerning medical issues" and did not need

treatment in a "24-hour monitored setting[,]" AR 1145-46, and stated that "[a]fter reviewing all

of the materials presented (473 pages) . . . there is no documentation to support your daughter's

ongoing need for residential treatment[,]" AR 1151. But there was documentation to support

Z.A.'s ongoing need for treatment, *see* AR 252, 2771, and Defendants' conclusory statements to

the contrary were contradicted by the record. The external reviewer summarized Z.A.'s medical

records before concluding Z.A. had no "objectively noted mental health problems of any type"

that necessitated "the continuation of 24 hour care, supervision, observation, management or containment." AR 9185. But the record included letters from four of Z.A.'s medical providers, including her current therapist, who opined that Z.A. did have mental health problems that required continued 24-hour care. *See, e.g.,* AR 3125-26. The external reviewer failed to engage with these opinions and provided no explanation why they were insufficiently "objective" to be addressed in their decision denying Plan coverage. As a result, Defendants' denials were plainly arbitrary and capricious, *D.K.*, 67 F.4th at 1242 (citation omitted), and as noted above, contravened Defendants' duty to justify their claim denials by addressing medical opinions that contradict their conclusions, *David P.*, 77 F.4th at 1312.

The foregoing demonstrates that Defendants' denials letters provided insufficient reasoning, supported by the record, to justify their continued denials of coverage on medical necessity grounds. Their denials were therefore arbitrary and capricious.

## II. PARITY ACT CLAIM

Plaintiffs' second claim is that Defendants violated the Parity Act by requiring Z.A. to display acute mental health symptoms before they would consider granting benefits for RTC care while applying a lesser standard to residential admission for analogous non-mental health care. ECF No. 47, at 44-46. The court cannot decide the Parity Act Claim on the possibility of a future denial of benefits. *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-581 (1985) (holding that Article III does not grant courts power to decide potential controversies that rest upon "contingent future events that may not occur as anticipated, or indeed may not occur at all"). With no basis to know whether Defendants will continue to deny coverage on remand or whether Z.A. will need RTC care in the future, the court finds this question premature to address

at this time. *See Theo M. v. Beacon Health Options*, 631 F.S Supp. 3d 1087, 1110-11 (D. Utah 2022); *David P. v. United Healthcare Ins. Co.*, 564 F. Supp. 3d 1100, 1123 (D. Utah 2021).

### III. REMEDY

Upon finding an ERISA violation, the court may reverse a claim denial and award benefits, or it may remand to the plan administrator for a renewed evaluation of the insured's claim. Generally, remand is the appropriate remedy when the ERISA violation was the result of a claim denial with inadequate factual findings or explanation. *David P.*, 77 F.4th at 1315. In some cases, however, the court has discretion to instead reverse and award benefits outright. *David P.*, 77 F.4th at 1315 (stating the court may reverse if the record "clearly shows that the claimant is entitled to benefits") (citation omitted); *D.K.*, 67 F.4th at 1244 (stating the court may reverse if necessary to deny the plan administrator another "bite at the apple" when "clear and repeated procedural errors" in denying benefits claims threaten their ability to act as a proper fiduciary) (citation omitted). While the court concludes remand is likely the most appropriate remedy here, additional guidance on when the court may award benefits would be helpful.[3]

On remand, there are some safeguards in place to discourage Defendants from simply repeating the ERISA violations outlined in this order. Defendants are obligated to conduct their review on remand based only on rationales that were both raised in the administrative record and communicated to Plaintiffs prior to the initiation of this litigation. *David P.*, 77 F.4th at 1315-16

---

[3] This court struggles to see how it can appropriately follow both of the Tenth Circuit's recent decisions on this issue. One Tenth Circuit panel awarded benefits to an ERISA plaintiff, rather than remanding to the plan administrator, on arguments regarding procedural insufficiencies similar to those Plaintiffs point out in this case. *See D.K.*, 67 F.4th at 1243-44. Just months later, however, this court was reversed by a different Tenth Circuit panel for awarding benefits instead of remanding, despite the presence of similar procedural insufficiencies. *See David P.*, 77 F.4th at 1312-15. Perhaps the difficult facts in *D.K.* weighed more strongly towards awarding benefits than those in *David P.* But the plan administrator's procedural insufficiencies complained of in *David P.*, *D.K.*, and this case are all comparable, and the Tenth Circuit has never indicated the court should remand unless the underlying facts themselves are particularly egregious. Additional guidance on when a district court may reverse ERISA administrators and award benefits, and when it must instead remand for the administrator's further consideration, would be helpful.

(citing *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1229 (10th Cir. 2021)) ("[R]emand . . . does not 'provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record . . . and not previously conveyed to Plaintiffs.'"). On remand, Defendants therefore cannot rely on any of the post-hoc reasons for denying benefits that they raised for the first time before this court.[4] They are obligated to limit their review only to the rationales for denying benefits that they stated in their denial letters.

The last issue that the court must address is what it means to limit Defendants to the rationales conveyed to Plaintiffs in the prelitigation appeals process. The meaning of "rationales" in this context does not appear to be settled. One view would say that "rationale" means "reasons," and because Defendants denied Plaintiffs benefits based on medical necessity, their review on remand is simply limited to that issue. But another view would say that "rationale" invokes the specific "evidence" Defendants raised in their denial letters explaining their reason for denying benefits. The court adopts the latter reading because it is more consistent with the purposes of ERISA and the meaningful dialogue in which Defendants are obliged to engage with Plaintiffs.

Unquestionably, plan administrators "must provide claimants with the rationales for denial prior to litigation because plan administrators who 'have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary,' preclude the claimant from 'full and meaningful dialogue regarding the denial of benefits.'" *D.K.*, 67 F.4th at 1241 (quoting *Spradley*, 686 F.3d at 1140

---

[4] These post-hoc rationales include, but may not be limited to the following: (1) that BlueFire provided mere custodial supervision for Z.A. or that Z.A. simply remained at BlueFire out of convenience; (2) that BlueFire couldn't provide RTC-level care because they failed to conduct a psychiatric evaluation within 24 hours of Z.A.'s arrival or schedule weekly therapy with a psychiatrist; and (3) that Plaintiffs failed to obtain preauthorization before receiving care at BlueFire, an out-of-network provider.

(citation and quotation omitted)). Otherwise, claimants could be "denied timely and specific explanations and be 'sandbagged by after-the-fact plan interpretations devised for purposes of litigation.'" *Id.* (quoting *Flinders*, 491 F.3d at 1191 (citation and quotation omitted)). If in this context, "rationales" simply means "reasons," Defendants would be free on remand to now read the opinions of medical necessity from Z.A.'s care providers, sort through her medical records that Plaintiffs repeatedly provided in the prelitigation appeals process, and find new evidence therein to justify their decision to deny benefits. In other words, they would be entitled to deny Plaintiffs a meaningful dialogue regarding the denial of benefits, waiting until after three levels of internal appeals and a district court's summary judgment order to provide timely and specific explanations of their coverage decisions. Because doing so would undermine Defendants' duties as ERISA fiduciaries, the only rationales Defendants may use on remand are those actually articulated in their denial letters. They can rely on medical necessity as a rationale, of course, and any citations to Z.A.'s medical records that their denial letters included to explain their denial of benefits on that basis. (But the denial letters contained no such citations.) This is the cost of Defendants' failure to meet their obligation to support their decision denying benefits with "reasoning and citations to the record[.]" *David P.*, 77 F.4th at 1312 (quoting *D.K.*, 67 F.4th at 1242)).

Perhaps, by so limiting the grounds on which Defendants can reconsider their coverage decisions upon remand, the court turns this procedure into an exercise in futility. The court has held that Defendants' decision to deny benefits, on the grounds outlined in their denial letters, was arbitrary and capricious. Relying on those same rationales to deny benefits on remand would be arbitrary and capricious a second time. But those are the only rationales Defendants may rely upon, because granting them another opportunity to engage in a more searching inquiry of Z.A.'s

medical records at this point would undermine the entire purpose of the meaningful dialogue ERISA requires.

  This court has become quite familiar with ERISA cases like the present one and is sympathetic to Plaintiffs' concern that regardless of this Order, Defendants may provide no more a full and fair review on remand. Often in these cases, the insurer attempts to play a game of "heads I win, tails you lose," cursorily denying plan benefits through inadequate denial letters, requiring the insureds to jump through hoops, including an internal appeals process and costly litigation to obtain a court order, which only results in the remand of the case to the same insurer to deny benefits again, now based on better reasoning. This practice flouts insurers' fiduciary duties under ERISA. But because Defendants' claim denials were primarily arbitrary and capricious for violating ERISA's requirements of addressing contrary medical opinions and sufficiently explaining their reasoning, the court orders remand as the remedy most likely appropriate here.

**ORDER**

For the foregoing reasons and consistent with this memorandum decision, the court **DENIES** Defendants' motion for summary judgment and **GRANTS** Plaintiffs' motion for summary judgment in part. Specifically:

1. Defendants' motion for summary judgment on Plaintiffs' ERISA Claim is **DENIED**.

2. Plaintiffs' motion for summary judgment on their ERISA Claim is **GRANTED**.

3. Plaintiffs' motion to reverse Defendants' claim denial is **DENIED**.

4. The court does not address the parties' cross-motions for summary judgment on Plaintiffs' Parity Act Claim.

5. This matter is **REMANDED** to Defendants for further consideration consistent with this Memorandum Decision and Order.

DATED this 28th of September 2023,

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge