IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| M.A., individually and on behalf of Z.A., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY; UNITED BEHAVIORAL HEALTH; and KAISER ALUMINUM FABRICATED PRODUCTS WELFARE BENEFIT PLAN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR BENEFITS AND AN AWARD OF ATTORNEY FEES**<br><br>Case No. 1:21-cv-00083-JNP<br><br>Chief District Judge Jill N. Parrish |

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"), 29 U.S.C. § 1185a. Plaintiffs seek recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) (the "ERISA Claim").[1] *See* ECF No. 68. In September of 2023, the court remanded the action to Defendants after finding that Defendants' claim denials were arbitrary and capricious. ECF No. 65 at 19. On remand, Defendants upheld the denial of benefits.

Presently before the court are the parties' cross-motions for summary judgment. ECF Nos. 68, 77. Having considered the parties' arguments and the record, Plaintiffs' motion for summary

[1] In the pre-remand proceedings, Plaintiffs also alleged a violation of the Mental Health Parity and Addiction Equity Act. The court opted to not address that claim in its September 2023 Order on account of it being premature. ECF No. 65 at 19–20. Plaintiffs do not again raise the claim, and the parties did not brief the issue.

judgment (entitled a "Renewed Motion for Benefits, Attorney Fees, Prejudgment Interest, and Costs") is denied in part and granted in part, and Defendants' motion for summary judgment is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Pre-Remand Factual Background

The court generally recites the facts as stated in its March 2024 Order. *See M.A. behalf of Z.A. v. United Healthcare Ins.*, No. 1:21-CV-00083-JNP-DBP, 2023 WL 6318091 (D. Utah Sept. 28, 2023).

Defendants United Healthcare Insurance, United Behavioral Health, and Kaiser Aluminum Fabricated Products Welfare Benefit Plan (the "Plan") (collectively, "Defendants") denied benefits allegedly due to Plaintiffs under the Plan, which is an ERISA-governed plan. ECF No. 65 at 1–2. At all relevant times, M.A. was a Plan participant and his daughter Z.A. was a Plan beneficiary, while Kaiser was the Plan administrator and United Healthcare was the designated claims administrator. ECF No. 2 ¶ 3; AR 12167, 12175. Plaintiffs obtained mental health care for Z.A. at BlueFire Wilderness Therapy ("BlueFire") between June 4, 2018 and August 8, 2018 and at Uinta Academy ("Uinta"), a residential treatment center ("RTC"), between August 9, 2018 and August 27, 2019. ECF No. 2 ¶ 4. Plaintiffs claim Defendants' wrongful denial of benefits for this care caused them to incur $230,000 in unreimbursed medical expenses. ECF No. 2 ¶ 61.

#### A. The Plan

The Plan offers benefits for medically necessary covered health services. AR 12168, 12172–73. For a treatment to be medically necessary under the Plan, it must correspond to the patient's needed level of care. AR 12171, 12173. The Plan gives Defendants discretion to interpret the Plan's terms and make factual determinations regarding Plan coverage. AR 12162.

The Plan excludes coverage for experimental or unproven services. AR 12123–24. United Healthcare created a Wilderness Therapy Behavioral Clinical Policy (the "Policy") that categorized wilderness therapy as an unproven treatment excluded from Plan coverage. AR 9168–72. United Healthcare reviewed Plaintiffs' claim for Plan benefits for Z.A.'s care at BlueFire under this Policy. AR 4784–85. Unlike wilderness therapy, RTC care is medically necessary under the Plan so long as the insured requires 24/7 treatment for symptoms that interfere with her safety or the safety of others or would prevent treatment at a less intensive level of care. AR 9215–16. A Plan participant must obtain prior authorization for out-of-network RTC care to have that treatment covered. AR 12074, 12100. United Healthcare used its Optum level of care guidelines to review Plaintiffs' claim for benefits for Z.A.'s treatment at Uinta. AR 4786–87, 9203–37.

**B. Z.A.'s Condition and Treatment**

Z.A.'s mental health declined in sixth grade. AR 178. In seventh grade, her parents learned she was engaging in self-harm and writing suicidal thoughts online. AR 178, 256. The next year, Z.A.'s situation worsened. She began using drugs and alcohol and was hospitalized repeatedly for attempted overdoses and other self-harm. AR 179–80, 202, 216. Z.A. became so disruptive at school that her assistant principal identified her need for intensive mental health support. AR 179–83, 201–10, 212, 215, 256. Z.A.'s parents sought support for her, and she began counseling in seventh grade. Her therapist, Dr. Pat Sharp, diagnosed her with persistent depression and generalized anxiety. AR 178–80, 218.

After a year of counseling with Dr. Sharp, Z.A. was transferred to a new therapist, Dr. Jeanette Higgins, who diagnosed Z.A. with "depressive disorder, a parent-child relationship problem, social exclusion or rejection, and a provisional diagnosis of a bipolar and related disorder." *Id.* In eighth grade, Z.A. began an intensive outpatient counseling program, but her

situation worsened. Z.A.'s school suspended her indefinitely because the district could not meet her mental health needs. AR 139, 181. Dr. Higgins then recommended residential treatment, which she believed necessary based on Z.A.'s need for an intensive intervention that included continuous monitoring. AR 218.

Z.A.'s parents admitted her to BlueFire on June 4, 2018. AR 89. There, Z.A. saw therapists Shannon Kerrick and Amanda Stone, who diagnosed her with "major depressive disorder and generalized anxiety disorder, as well as parent-child relational problems." AR 139–40, 171, 254. Kerrick noted that Z.A.'s progress at BlueFire was slow and recommended continuing RTC treatment after leaving BlueFire. AR 254. Z.A. was discharged from BlueFire on August 8, 2018 and admitted to Uinta the following day. AR 552.

At Uinta, Z.A. initially denied her past self-harm and suicide attempts, but she was still monitored every fifteen minutes throughout the night. AR 548–49, 560. This close supervision continued when her risk level was downgraded slightly in September of 2018, and did not end until sometime after March of 2019. AR 368–69, 372, 260, 279, 302, 308, 1329, 1382. While at Uinta, Z.A.'s treatment notes reflected some positive periods, *see, e.g.*, AR 446, 455, 457, 491, 886, and some negative periods, *see, e.g.*, AR 449–50, 497, 500. During this time, Z.A. was diagnosed with depressive disorder, generalized anxiety disorder, and dependent personality disorder traits. AR 873, 1025. In December of 2018, her treatment team noted "modest improvements in her depression" but continued "high anxiety[,]" and in March of 2019, her treatment team wrote she was in a "preparation stage of change." AR 1342–42. When her progress stalled, however, her treatment team advised continued treatment out of concern that without it, Z.A. would relapse into "worse and dangerous behaviors." *Id.* Z.A. continued treatment at Uinta until she was discharged on August 27, 2019.

### C. Denial of Benefits and Prelitigation Appeals — BlueFire

Plaintiffs did not seek prior authorization for Z.A.'s treatment at BlueFire, an out-of-network provider. AR 47. When Plaintiffs sought coverage, Defendants denied their claim due to non-timely receipt of Z.A.'s medical records. AR 45, 89–90. Plaintiffs submitted an initial internal appeal of this decision, stating they had already provided Z.A.'s medical records. *Id.* On February 14, 2019, Defendants responded, upholding their denial of benefits, but on different grounds. Dr. Kenneth Fischer, the reviewing physician, concluded Z.A.'s care at BlueFire was not covered by the Plan due to the wilderness therapy Policy, because BlueFire didn't meet the definition of an RTC, and because Z.A.'s care was not medically necessary. AR 47, 1813–14.

On April 2, 2019, Plaintiffs submitted a second appeal of Defendants' denial of coverage for Z.A.'s care at BlueFire. AR 1789–2774. Along with their appeal, Plaintiffs attached BlueFire's license, peer-reviewed literature contesting Defendants' claim that wilderness therapy is an unproven treatment, and letters of medical necessity supporting Z.A.'s claim for benefits from Dr. Alison LaFollette, Dr. Higgins, and other treatment providers and school administrators. AR 1852–53, 2004–2729, 2767, 2769, 2771, 2773. Defendants denied this second appeal in a pair of letters dated May 3, 2019 and July 24, 2019. AR 4786–88, 9151–52. These letters relied on opinions from reviewing physicians Dr. Howard Wong and Dr. Sonya Jones, both of whom concluded that Z.A. was in wilderness therapy, which was beyond Plan coverage, and that her treatment at BlueFire was not medically necessary. AR 4786–88. Dr. Wong specifically noted his conclusion that Z.A. was not "reported to be dangerous to herself or others[,]" could "look after her day to day needs[,]" and "did not have clinical issues requiring 24/7 monitoring." *Id.* Similarly, Dr. Jones concluded Z.A. had stable "medical and mental health[,]" could "take care of her needs[,]" and "did not require 24-hour care[.]" AR 9151–52.

Plaintiffs requested an external review of Defendants' claim denials for Z.A.'s treatment at BlueFire. AR 4781–6905. The external reviewer upheld Defendants' decision. AR 9175–79. The reviewer based this decision on an unnamed reviewing physician's opinion that Z.A.'s care at BlueFire was not medically necessary. AR 9178. The external reviewer did not discuss the wilderness therapy Policy as another justification for denying benefits. *Id.*

**D. Denial of Benefits and Prelitigation Appeals — Uinta**

On August 21, 2018, Defendants denied Plaintiffs' claims for Plan coverage of Z.A.'s treatment at Uinta. AR 195–96. Reviewing physician Dr. Jeffrey C. Uy based this decision on his conclusion that her treatment there was not medically necessary. *Id.*

Plaintiffs submitted a first appeal of this denial on December 28, 2018. AR 176–644. Plaintiffs attached letters attesting to the medical necessity of her treatment at Uinta from Dr. LaFollette and from Shannon Kerrick, her BlueFire social worker. AR 252, 2771. In response, Defendants reversed their position in part, paying benefits for Z.A.'s treatment between August 9, 2018 and September 21, 2018. AR 1145–46. After that date, Defendants denied continued coverage in a pair of letters dated February 2 and February 8, 2019. AR 1145–46, 1151–52. These letters were written by two reviewing physicians, Dr. Nelson P. Gruber and Dr. Michael Soto, who concluded her treatment was no longer medically necessary as of September 22, 2018. *Id.* Dr. Gruber concluded continued coverage was not appropriate in part because Z.A.'s condition was improving, and she "presented no significant, acute behavioral management challenges[,]" "posed no risk of harm to herself or others[,]" and "had no self harm behaviors[.]" AR 1145–46.

In response, Plaintiffs submitted a second appeal. AR 1118–1784. They included an additional letter of medical necessity from Melissa Keller Adamson, a social worker at Uinta, and Z.A.'s treatment records from Uinta, which reflected recent periods of difficulty that led her to be

placed on suicide watch. AR 1128, 1325–26. On May 2, 2019, Defendants again denied coverage in a letter by Dr. Sonya Jones. AR 6915. Plaintiffs requested an external review of Defendants' claim denials. AR 6911–8640. The external reviewer upheld the denial of benefits on medical necessity grounds. AR 9180–86.

After exhausting the Plan's prelitigation appeals, Plaintiffs filed this ERISA action on June 4, 2021. ECF No. 2.

## II. The Court's Remand Order

In its September 2023 Order, the court found that Defendants arbitrarily and capriciously denied plan benefits for Z.A.'s treatment at BlueFire and Uinta. ECF No. 65. With respect to Z.A.'s care at BlueFire, the court found that Defendants' interpretation of the Plan, which categorizes wilderness therapy as an unproven treatment, was ambiguous and arbitrarily applied. *Id.* at 9. The court also found that Defendants "arbitrarily refused to credit or engage with the opinions of Z.A.'s medical providers and then failed to sufficiently explain their reasons for denying benefits, supported by citations to Z.A.'s medical records." *Id.* at 10. With respect to Z.A.'s treatment at Uinta, the court similarly found that Defendants denied the claims without meaningfully evaluating and responding to the opinions of Z.A.'s medical providers and that their denial letters provided insufficient explanation. *Id.* at 17.

Finding remand to be appropriate, the court outlined certain safeguards to govern the process. *Id.* at 20. Specifically, Defendants were obligated to conduct their review on remand based only on rationales that were both raised in the administrative record and communicated to Plaintiffs prior to the initiation of this litigation. *Id.*; *see David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1315–16 (10th Cir. 2023) (citing *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1229 (10th Cir. 2021)) ("[R]emand . . . does not 'provide the plan administrator the opportunity to

reevaluate a claim based on a rationale not raised in the administrative record . . . and not previously conveyed to Plaintiffs.'"). On remand, Defendants therefore could not rely on any of the post-hoc reasons for denying benefits that they raised for the first time before this court. ECF No. 65 at 21. They were obligated to limit their review only to the rationales for denying benefits that they stated in their denial letters.

In ruling that Defendants were limited to their prelitigation "rationales" on remand, the court further counseled that "rationales" in this context referred to the specific pieces of evidence cited in Defendants' denial letters upon which they denied Plaintiffs' benefits claims. *Id.* at 21. Thus, Defendants could only justify a denial of benefits using the reasons and citations to Z.A.'s medical records that were included in the prelitigation denial letters—and the denial letters contained no such citations. *Id.* at 22. The court acknowledged that this instruction may turn the remand process into an exercise in futility but reasoned that this was the cost of Defendants' failure to meet their obligation to support their decision denying benefits with reasoning and citations to the record. *Id.* at 22.

## III. Post-Remand Redeterminations

On remand, Plaintiffs' claims went through an additional two rounds of appeal. For both the BlueFire and Uinta treatment, Defendants again denied the claims.

### E. Post-Remand Denial — BlueFire

On January 26, 2024, Plaintiffs submitted their first post-remand appeal relating to the BlueFire treatment. *See* ECF No. 68-2. Defendants issued a denial letter on February 26, 2024. *See* ECF No. 76-1. In denying the claim, the reviewing physician, Dr. Shaley Sehgal, considered BlueFire medical records, the appeal letters, and relevant court documents, case notes, and exhibits. *Id.* at 3. Dr. Sehgal provided detailed summaries of the letters and materials offered by

Plaintiffs, including the letters of medical necessity written by Dr. LaFollette, Jeanette Higgins, and Shannon Kerrick. *Id.* at 4–8. Dr. Sehgal also used the American Association of Community Psychiatrists CALOCUS-CASII Child and Adolescent Level of Care/Service Intensity Utilization System for Level 5 (the "CALOCUS-CASII Guidelines"). *Id.* at 8. Dr. Sehgal reached the conclusion that, under the CALOCUS-CASII Guidelines, 24-hour care in a mental health residential treatment center level of care was appropriate. *Id.* at 10.

However, Dr. Sehgal found that BlueFire did not provide services that met the intensity of a clinical residential treatment center under the American Academy of Child and Adolescent Psychiatry Principles of Care for Treatment of Children and Adolescents with Mental Illnesses in Residential Treatment Centers (the "AACAP Principles"). *Id.* For example, Dr. Sehgal noted that the record did not contain any psychiatric or nursing notes, that there is no evidence of a psychiatrist meeting with Z.A. weekly, that there did not appear to be sufficient family engagement in the program, and that there was no evidence of a medical assessment taking place within a week of Z.A. transferring to the facility. *Id.* at 10–11. Each of these were required under the AACAP Principles. *Id.*

On May 17, 2024, Plaintiffs filed their level two post-remand appeal. *See* ECF No. 68-3. On July 11, 2024, Defendants issued another denial letter. *See* ECF No. 68-4. In that letter, reviewing physician Dr. Theodore Allchin similarly found that the clinical information provided supported 24-hour care in a residential treatment center but that BlueFire did not provide services that met the intensity of a clinical residential treatment center. *Id.* at 6.

**F. Post-Remand Denial — Uinta**

Plaintiffs' January 26, 2024 post-remand appeal also related to Z.A.'s treatment at Uinta. *See* ECF No. 68-2. Defendants issued a denial letter with respect to the Uinta treatment on February

26, 2024. *See* ECF No. 76-2. Within the denial letter, reviewing physician Dr. Sherifa Iqbal outlined various documents that were reviewed and employed both the CALOCUS-CASII Guidelines and the original Optum Level of Care Guidelines: Mental Health Residential Treatment Center (the "Optum LOC RTC Guidelines"). *See id.* at 16. After providing a detailed analysis that often cited to the medical record, Dr. Iqbal found that the treatment was not medically necessary as of September 22, 2018, primarily because of certain progress that Z.A. had been making (though Dr. Iqbal did concede that Z.A. had sporadic issues both leading up to and after September 22). *Id.* at 7–11.

On May 17, 2024, Plaintiffs filed their level two post-remand appeal. *See* ECF No. 68-3. On July 11, 2024, Defendants issued another denial letter. *See* ECF No. 68-5. In that letter, reviewing physician Dr. Theodore Allchin similarly found the treatment not medically necessary. *See id.* at 3. Dr. Allchin used the CALOCUS-CASII Guidelines in the analysis. *Id.* at 8.

**IV. Current Proceedings**

On December 31, 2025, Plaintiffs moved for the case to be re-opened, a request that the court granted. *See* ECF Nos. 67, 71. Plaintiffs concurrently filed another motion, entitled a "Renewed Motion for Benefits, Attorney Fees, Prejudgment Interest, and Costs." ECF No. 68. In that motion, Plaintiffs in part argue that Defendants' post-remand conduct violated the guardrails the court set out in its prior order and that, consequently, the court should award Plaintiffs full benefits for the treatment and the other associated fees, interest, and costs. ECF No. 68 at 25.

On March 18, 2026, Defendants filed a motion entitled "Cross Motion for Summary Judgment." ECF No. 77. Defendants argue that their post-remand decisions were not arbitrary and capricious and that the court should grant summary judgment in their favor. ECF No. 77 at 7.

## DISCUSSION

### I. Cross-Motions for Summary Judgment

As a preliminary matter, the court addresses the procedural posture of the case. To start, Plaintiffs filed a "Renewed Motion for Benefits, Attorney Fees, Prejudgment Interest, and Costs." ECF No. 68. Defendants in turn filed a "Cross-Motion for Summary Judgement." ECF No. 77.

The posture of Plaintiffs' motion incorrectly assumes that the court has already ruled that Defendants' post-remand denials were improper. The court did indeed grant summary judgment already, but it then remanded the case back to Defendants to conduct a renewed evaluation. *See* ECF No. 65. Now that Defendants have done so, and the case has been re-opened, the court properly considers whether either party is entitled to summary judgment based on the renewed, post-remand evaluations. Furthermore, whether or not Defendants adhered to the court's remand strictures will be considered in the court's analysis, but any alleged non-compliance by Defendants does not automatically shift the procedural posture to a consideration of remedies. *See, e.g.*, *Colby v. Assurant Emp. Benefits*, 818 F. Supp. 2d 365, 381–82 (D. Mass. 2011), *aff'd sub nom. Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan*, 705 F.3d 58 (1st Cir. 2013) (factoring an administrator's disregard of the court's remand order into whether the administrator acted arbitrarily and capriciously post-remand).

After all, it is customary in ERISA cases for district courts to review cross-motions for summary judgment post-remand. *See Graham O. v. United Behav. Health*, No. 1:18-CV-31-TS, 2024 WL 170739, at *1 (D. Utah Jan. 16, 2024). The court thus treats these two motions as cross-motions for summary judgment.

#### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, when both parties move for summary judgment in an ERISA proceeding focusing on a benefit denial claim, the parties have effectively "stipulated that no trial is necessary" and thus "summary judgment is merely a vehicle for deciding the case." *See LaASMAR v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (citation omitted). In these instances, "the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *Id.* (citation omitted).

When a claim administrator holds discretionary authority to determine benefits eligibility, a reviewing court applies "a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Weber v. GE Grp. Life Assurance Co*., 541 F.3d 1002, 1010 (10th Cir. 2008) (citations omitted). An administrator with discretionary authority may delegate its discretion to a third party, whose denial decisions are then also reviewed under an arbitrary and capricious standard. *Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 926–27 (10th Cir. 2006).

The parties dispute whether this deferential standard of review applies. Defendants argue that the court should continue to apply it in these post-remand proceedings. ECF No. 75 at 20. Plaintiffs ask the court to review these post-remand denials *de novo*. ECF No. 88 at 37. In line with other courts, the court applies the deferential standard of review. *See Torrey v. Qwest Commc'ns Int'l, Inc.*, 838 F. Supp. 2d 1201, 1209 (D. Colo. 2012) (applying the arbitrary and capricious standard post-remand); *McMillan v. AT&T Umbrella Benefit Plan No. 1*, No. 14-CV-717-GKF-PJC, 2017 WL 3478482, at *4 (N.D. Okla. Aug. 14, 2017), *amended in part*, No. 14-CV-717-GKF-

PJC, 2017 WL 4407935 (N.D. Okla. Oct. 4, 2017), *and aff'd*, 746 F. App'x 697 (10th Cir. 2018), *and aff'd*, 746 F. App'x 697 (10th Cir. 2018) (same).

Claim denials are upheld on arbitrary and capricious review if "reasonable and supported by substantial evidence." *D. K. v. United Behavioral Health*, 67 F.4th 1224, 1235 (10th Cir. 2023) (citing *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)); *see also David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1308 (10th Cir. 2023) (quoting *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir. 2009)) ("We define substantial evidence as 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker. Substantial evidence requires more than a scintilla but less than a preponderance.'"). A coverage decision lacks substantial evidence if it rejects and fails to explain why it disagrees with opinions from a plaintiff's medical providers, *D. K.*, 67 F.4th at 1238–42, if it fails to sufficiently explain its conclusions with supportive reasoning and citations to the record, *id.* at 1242–43, or if it "is not grounded [on] any reasonable basis[,]" *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007) (citations and internal quotation marks omitted), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

A coverage decision's reasonableness is further judged on whether it resulted from a "reasoned and principled process." *D. K.*, 67 F.4th at 1236 (quoting *Flinders*, 491 F.3d at 1193). To avoid having their claim denials found arbitrary and capricious, ERISA administrators are obliged to engage in a "full and fair review" of benefits claims and appeals, considering the insured's records and sufficiently explaining their decision. *See* 29 C.F.R § 2560.503-1(h)(2)(iii)–(iv). "ERISA denial letters play a particular role in ensuring full and fair review[,]" so "[a] district court [is] correct to focus its review on the denial letters" when evaluating whether an insurer

conducted a full and fair review. *D. K.*, 67 F.4th at 1239.

To avoid a finding that a denial of benefits was arbitrary and capricious, ERISA administrators must engage in "reasonable, 'meaningful dialogue'" in the denial letters they issue. *Id.* at 1240. Meaningful dialogue requires denial letters to be "comprehensive and include requests for additional information, steps claimants may take for further review, and specific reasons for the denial." *Id.* at 1239 (citing 29 C.F.R. § 2560.503-1(f)(3); 29 C.F.R. § 2560.503-1(h)(3), (4)). In accordance with ERISA's objective of facilitating meaningful dialogue regarding benefits denials, courts limit their review of Defendants' claim denials to the information conveyed to Plaintiffs in the prelitigation and post-remand claims and appeals process. *See Ian C. v. UnitedHealthcare Ins. Co.*, 87 F.4th 1207, 1226 (10th Cir. 2023) ("Finally, United insists that its reviewers' internal notes are properly a part of the administrative record for Ian C.'s claim. Our recent disposition in *D. K.* forecloses this argument. . . . Only the rationales articulated to the beneficiary in the denial letter are eligible for review[.]").

**B. Defendants' Post-Remand Denials**

Plaintiffs argue the post-remand denials were arbitrary and capricious foremost because Defendants failed to follow the court's remand guardrails. The court first addresses this argument before turning to Plaintiffs' other arguments.

**1) Defendants' Compliance with the Court's Remand Instructions**

Plaintiffs' first argument is that Defendants ignored the court's remand instructions and that the court should accordingly award benefits to Plaintiffs. Defendants, for their part, do not contest that their post-remand denials blatantly ignored the guardrail instructions the court set. *See* ECF No. 77 at 19–23. Instead, they argue against those instructions, asserting they go against Tenth Circuit precedent. *See, e.g.*, *id.*; *see also* ECF No. 77 ¶ 25 (Defendants stating that "[t]he Court's

safeguards were not immediately appealable because the remand order was not a final order").

Given this disregard for the court's order, the court's decision would seemingly be an easy one at this stage. After all, court orders cannot be ignored simply because a party disagrees with them or believes them to be unsound. *See Cooper v. Aaron*, 358 U.S. 1, 24 (1958) (Frankfurter, J., concurring) ("Criticism need not be stilled. Active obstruction or defiance is barred."); *United States v. Jefferson*, 816 F. Supp. 3d 590, 598 (E.D. Va. 2026) ("Simply flouting a judicial order because of a disagreement of 'interpretation' and acting like that order does not exist is simply not an option."). Moreover, a failure to abide by a court's remand order may by itself make any post-remand decisions arbitrary and capricious. *See Colby v. Assurant Emp. Benefits*, 818 F. Supp. 2d 365, 384 (D. Mass. 2011) ("In light of USIC's failure to abide by, as well as its continued resistance to, the Order in *Colby I,* this Court now awards Dr. Colby retroactive LTD benefits . . . ."); *Aisenberg v. Reliance Standard Life Ins. Co.*, 718 F. Supp. 3d 480, 490 (E.D. Va. 2024) ("As a general rule, on the remand of a case after appeal, the agency from which appeal is taken must comply with the mandate of the court and obey the directions therein without deviation. . . . This directive, which applies full-well to Defendant, was not followed. . . . [D]isregarding the Court's directives may — standing alone — amount to an abuse of discretion . . . .").

What makes Defendants' post-remand actions all the more striking is that they had other options they could have pursued. For example, they could have followed in good faith the remand process the court set out and appealed any final decision. If they wanted more immediate relief, they could have simply moved for the court to reconsider its prior order. *See* Fed. R. Civ. P. 54(b); *Romero v. Core Civic, Inc.*, No. 1:21-CV-544 KG/KRS, 2022 WL 17360324, at *2 (D.N.M. Dec. 1, 2022) ("Reconsideration of an interlocutory order is a matter of the Court's discretion . . . ."). The court is hard pressed to understand Defendants' actions up to this point and is well within its

discretion to base its holding on this non-compliance alone.

Nevertheless, upon further reviewing the relevant case law, the court finds that its initial remand instructions were too restrictive—a decision, it is worth emphasizing again, that could have been reached upon a motion for reconsideration. In the court's prior order, the court grappled with two then-recent Tenth Circuit decisions. *See M.A. behalf of Z.A. v. United Healthcare Ins.*, No. 1:21-CV-00083-JNP-DBP, 2023 WL 6318091, at *10–*11 (D. Utah Sept. 28, 2023). First, in May 2023, the Tenth Circuit ruled in *D. K. v. United Behav. Health*, 67 F.4th 1224 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 808 (2024). The panel held that a court can award benefits and forego remand "when the record shows that benefits should clearly have been awarded by the administrator" or "if a plan administrator's actions were clearly arbitrary and capricious." *Id.* at 1243. Ultimately, the panel held that "[c]onsidering the administrator's clear and repeated procedural errors in denying this claim, it would be contrary to ERISA fiduciary principles to mandate a remand and provide an additional 'bite at the apple.'" *Id.* at 1244.

But just a few months later, in August 2023, the Tenth Circuit reversed this court's award of benefits that had been based on procedural errors in *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293 (10th Cir. 2023). This panel stated that, "[g]enerally, '[r]emand is appropriate if the administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision.' . . . 'But if the evidence in the record clearly shows that the claimant is entitled to benefits, an order awarding such benefits is appropriate.'" *Id.* at 1315 (citation modified). Because the panel found that United failed to consider all of the evidence, failed to adequately explain its decision, and failed to engage with the plaintiffs, the court decided remand was proper for further consideration. *Id.* Though citing to *D. K.* at various points within the ruling, the panel did not engage with *D. K.*'s award of benefits within its remand analysis.

What remains unclear, then, is whether the Tenth Circuit has adopted a procedural basis for awarding benefits (where the administrator has acted arbitrarily and capriciously by committing clear and repeated procedural errors), in addition to its clearly recognized substantive basis for awarding benefits (when the record is clear they are due). And if a procedural basis has been adopted, as suggested by the Tenth Circuit's ruling in *D. K.*, it remains unclear what level of procedural violations warrant an award of benefits.

District courts in this circuit have accordingly varied in their approach to these two cases, with some adopting the procedural basis and others not. *Contrast IAN C v. United Healthcare Ins.*, No. 2:19-CV-474-HCN, 2024 WL 3415890, at *2 (D. Utah July 15, 2024) ("Additionally, in very limited circumstances, a court can award benefits if a plan administrator engaged in 'clear and repeated procedural errors' when denying a claim."), *and S.K. v. United Behav. Health*, No. 2:18-CV-880-RJS-DBP, 2023 WL 7221013, at *34 (D. Utah Sept. 29, 2023) ("Benefits may also be awarded if an administrator's actions 'were clearly arbitrary and capricious,' or if remand would simply be an 'opportunity to retool a defective system,' or give 'an additional 'bite at the apple' to ERISA administrators acting unjustly.'") (citation modified), *with S.B. v. Blue Cross Blue Shield of Illinois*, No. 2:22-CV-336-AMA, 2025 WL 327920, at *13 (D. Utah Jan. 29, 2025) ("Upon a finding that BCBS acted arbitrarily and capriciously two remedies are available: remand or an award of benefits. Under Tenth Circuit precedent remand is the default unless the court determines that the record clearly shows that the plaintiff is entitled to benefits. *See David P.*, 77 F4th at 1315–16. But that default usually arises in the context of a denial based upon medical necessity—an issue not presented here.").

Animating much of this divergence in approach is a concern that the remand process provides an additional "'bite at the apple' to ERISA administrators acting unjustly," at a significant

cost to plan claimants. *See S.K.*, No. 2:18-CV-880-RJS-DBP, 2023 WL 7221013, at *34 (quoting *D. K.*, 67 F.4th at 1243). Indeed, courts have long been skeptical of plan administrators devising and deploying post-hoc arguments and rationales in litigation to "shore up" claim denials. *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 848 n.7 (6th Cir. 2000); *see Halpin v. W.W. Grainger*, *Inc.*, 962 F.2d 685, 696 (7th Cir. 1992) (stating ERISA and its regulations "were not intended to be used . . . as a smoke screen"); *Spradley v. Owens-Illinois Hourly Emps. Welfare Ben. Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) ("[W]e will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation."). Yet, the remand process and the additional "bite" that it provides appears to enable much of the same behavior.

Fundamentally, ERISA mandates that Plan administrators provide claimants with a "full and fair review." 29 U.S.C. § 1133(2). Nevertheless, in many cases, United Healthcare and other claim administrators appear to be reviewing claims in a less than full and seemingly unfair manner. *See Dwyer v. United Healthcare Ins. Co.*, 115 F.4th 640, 650 (5th Cir. 2024) ("We therefore join a growing number of decisions rejecting similar denial letters issued by United across the country."). Plan claimants who pursue already costly litigation then face an additional burden at the remand stage: having to rebuff denial rationales that should have been available to them often years prior when their ability to marshal contrary evidence from contemporaneous medical provider opinions was still fresh.

The court is sympathetic to Plaintiffs' argument that the current remand process appears to incentivize plan administrators to provide cursory, violative denial letters that simply state the treatment was not medically necessary. *See* ECF No. 68 at 23. Few claimants have the resources or ability to pursue litigation, and even when facing review by a court, the plan administrators are

then able to rectify their procedural violations on remand, facing a hamstrung claimant.

These process considerations inform how courts structure remand orders. Upon remand, courts often order that administrators must review claims for "further, and proper, consideration." *David P.*, 77 F.4th at 1315. Courts also restrict the remand analysis, generally barring consideration of new rationales not raised in the administrative record. *See id.* ("Our remand, however, does not 'provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record,' . . . and not previously conveyed to Plaintiffs.") (internal citations removed).

In its prior order, the court construed its limit on raising new rationales to include a limit on citing to evidence not previously cited. In certain contexts, this additional restriction would help to tailor the remand process to focus solely on the substantive arguments previously conveyed to claimants. In this case, however, the restriction encumbered Defendants' ability to conduct a proper review of the claims, most prominently because Defendants completely failed to cite to the record in their initial denials. Because remand instructions should encourage attention to the substantive issues without unduly constraining the process, the court will not enforce its previously stated limit on citations to the record when reviewing Defendants' post-remand denials. But the court continues to adhere to the limit on new rationales, which the Tenth Circuit has endorsed. *See id.*

2) **Defendants' Post-Remand Denials Were Not Arbitrary and Capricious**

Reviewing Defendants' post-remand denials under the arbitrary and capricious standard, the court finds that the post-remand denials were "reasonable and supported by substantial evidence." *See D. K.*, 67 F.4th at 1235 (citing *Adamson*, 455 F.3d at 1212).

Plaintiffs raise numerous arguments, including that (1) Defendants improperly based the post-remand denials on new or prohibited rationales, and (2) the record supports that Z.A.'s

treatment was medically necessary.

The court first considers whether Defendant's post-remand rationales were new or prohibited by the court's prior order. At the outset, the court notes that the line between a new rationale and an elaboration or refinement of a previous rationale is sometimes murky and often context dependent. This line becomes murkier due to the iterative opportunities defendants get to "clarify" their rationales in the remand process. Policing this boundary can therefore be difficult.

As a prime example, in its prior order, the court restricted Defendants to rationales that they previously raised and communicated to Plaintiffs in the pre-litigation process. For the BlueFire treatment, the rationales that the pre-litigation denial letters did convey (though, at the time, arbitrarily and capriciously) were: (1) under the wilderness therapy Policy, the treatment was not covered, (2) under the Optum LOC RTC Guidelines, the treatment was not medically necessary, and (3) BlueFire did not provide the scope or intensity of services that would meet the definition of a clinical residential treatment center. *See* ECF No. 65 at 15; AR 1813–14; AR 4786–87; AR 9150–52; AR 9175–79.

The court also stated that Defendants could not rely on certain rationales that they had only raised once litigation started. "These post-hoc rationales include, but may not be limited to the following: (1) that BlueFire provided mere custodial supervision for Z.A. or that Z.A. simply remained at BlueFire out of convenience; (2) that BlueFire couldn't provide RTC-level care because it failed to conduct a psychiatric evaluation within 24 hours of Z.A.'s arrival or schedule weekly therapy with a psychiatrist; and (3) that Plaintiffs failed to obtain preauthorization before receiving care at BlueFire, an out-of-network provider." ECF No. 65 at 21 n.4.

The first and third of these listed post-hoc rationales were clearly new and separate arguments that had not been raised to Plaintiffs in the pre-litigation process. But the second

rationale—that BlueFire could not provide RTC-level care because it did not conduct a psychiatric evaluation within 24 hours or schedule weekly psychiatric therapy—presented a closer call. The court now reconsiders its prior analysis and finds that this argument was not an entirely new post-hoc rationale. Rather, it was an elaboration of Defendants' existing argument that BlueFire did not provide the scope or intensity of services that would meet the definition of a clinical residential treatment center.

In this context, this distinction matters. Before the court ordered a remand, Plaintiffs were faced with constantly evolving rationales, turning the appeals process into a game of whack-a-mole. Defendants continued to play that game into the litigation process, providing an eleventh-hour explanation for why BlueFire did not provide the necessary services to be considered a residential treatment center. That eleventh-hour explanation rendered the denial of benefits arbitrary and capricious because it was untimely and indicative of a lack of meaningful dialogue between the parties.

But Defendants' renewed elaboration on this argument now does not present the same issues. Post-remand, Defendants were obliged by the ERISA process to further elaborate and explain any continued denials based on the broader argument that BlueFire did not provide the necessary services, and they did so. And though their compliance comes unfortunately late and only due to court intervention, Plaintiffs now have had the opportunity for meaningful dialogue with Defendants. Accordingly, Defendants' argument that BlueFire did not provide the necessary services to be considered a residential treatment center—and the supportive explanatory reasoning—were valid arguments for Defendants to make post-remand.

Plaintiffs respond, however, that Defendants had never cited to the AACAP Principles in the pre-litigation process. Plaintiffs argue that the use of these specific Principles is tantamount to

employing a new rationale.

The court agrees that, at times, the use of new analytical guidelines does violate the ERISA process by rising to the level of being a new denial rationale. The court has found so before. *See Anne A. v. United Healthcare Ins. Co.*, No. 2:20-CV-00814-JNP, 2026 WL 811540, at *13 (D. Utah Mar. 24, 2026). But the court has never expressed this as a per se rule. For example, in *D.B. v. United Healthcare Insurance*, the court found the use of a new analytical framework to be violative when Defendants introduced the new framework "in the very last post-remand denial letter, depriving Plaintiff of any opportunity to tailor her arguments to the newly relevant framework." No. 1:21-CV-00098-JNP-CMR, 2026 WL 851250, at *10 (D. Utah Mar. 27, 2026). The court noted that "claimants often explicitly rely on the relevant guidelines used by plan administrators when crafting their arguments in the pre-litigation and litigation process." *Id.* at *9. Thus, "allowing a plan administrator to justify a denial on new guidelines after consistently relying on a different set of guidelines for years would disadvantage claimants, potentially allowing administrators 'interminable opportunities to search for alternative grounds to deny benefits.'" *Id.* (quoting *Spradley v. Owens-Illinois Hourly Emps. Welfare Ben. Plan*, 686 F.3d 1135, 1142 (10th Cir. 2012)). Similarly, in *Anne A.*, the court found fault with Defendants using the CALOCUS-CASII Guidelines post-remand when they had only used the Optum LOC RTC Guidelines pre-remand. *See Anne A.*, No. 2:20-CV-00814-JNP, 2026 WL 811540, at *13.

Here, the AACAP Principles were introduced in a different context. In the pre-litigation process, Defendants argued that BlueFire did not provide the required services to be considered a residential treatment center, but they did not elaborate on how they came to that decision. Now, they attempt to do so using the AACAP Principles. Unlike in *Anne A.*, they are not switching from one analytical framework to another. And unlike in *D.B.*, Plaintiffs had the opportunity to engage

with the AACAP Principles in the second level of post-remand review. Furthermore, the AACAP Principles are not employed in the same way as the CALOCUS-CASII or Optum LOC RTC Guidelines. While all provide evaluative criteria to some degree, the CALOCUS-CASII and Optum Guidelines are more formal, standardized assessment instruments. For all these reasons, the court does not find Defendants' reference to the AACAP Principles as raising a new rationale.

For the Uinta treatment, the rationale that the pre-litigation denial letters conveyed was that Z.A. made progress during her treatment, so the treatment was no longer medically necessary as of September 22, 2018 under the Optum LOC RTC Guidelines. ECF No. 65 at 6; AR 195; AR 6913–15; AR 9180–86; *see* ECF No. 77 at 9 (Defendants conceding that they used the Optum LOC RTC Guidelines in the pre-litigation process). As of 2020, Defendants retired those guidelines in favor of the CALOCUS-CASII Guidelines. ECF No. 77 at 9. Plaintiffs allege that the use of the CALOCUS-CASII Guidelines post-remand violated the court's prior order to not invoke new rationales.

Consistent with the court's prior orders, the court finds Defendants' use of the CALOCUS-CASII Guidelines in the first remand letter to be a new rationale. But as in *Anne. A.*, the court's exclusion of this rationale has a limited effect. *See Anne A.*, No. 2:20-CV-00814-JNP, 2026 WL 811540, at *13. Here, the first denial letter also employed the Optum LOC RTC Guidelines.[2] While the second and final denial letter only used the CALOCUS-CASII Guidelines, Plaintiffs by then had the opportunity to engage with the new analytical framework. *See* ECF No. 68-3 at 79–138.

[2] Plaintiffs also argue that Defendants should not be able to use the Optum RTC LOC Guidelines because another district court enjoined United from using those guidelines. ECF No. 88 at 46. But Plaintiffs also note that the specific guidelines Defendants used here differ to at least some degree from the ones that were enjoined. *Id.* In addition, the post-remand denial letters were issued before any injunction was entered.

Indeed, and importantly, Plaintiffs agreed that the CALOCUS-CASII Guidelines would "appropriately" evaluate Z.A.'s condition in their second-level post-remand appeal. ECF No. 68-3 at 79. Plaintiffs accordingly made extensive arguments within the CALOCUS-CASII framework in their second-level appeal, requiring the final reviewer to engage with the same framework when responding.

Having resolved the permissible scope of Defendants' post-remand reasoning, the court turns to the actual denial of benefits—based on sufficiency of services for BlueFire and on medical necessity for Uinta. With respect to BlueFire, Plaintiffs do not argue anything additional beyond their contention that Defendants' reliance of the AACAP Principles was improper, which the court has already addressed. With respect to Uinta, Plaintiffs argue that the treatment was medically necessary after September 21, 2018. *See* ECF No. 88 at 38.

Despite Plaintiffs' arguments, Defendants' post-remand denial letters "[were] predicated on a reasoned basis." *Ellis v. Liberty Life Assurance Co.*, 958 F.3d 1271, 1290 (10th Cir. 2020) (quoting *Adamson*, 455 F.3d at 1212). The letters explained their conclusions, cited to the record, and addressed Plaintiffs' arguments, including the letters of necessity that Plaintiffs provided. *See* ECF No. 68-5 at 8. Ultimately, the reviewers found that by September 22, 2018, Z.A.'s "ongoing symptoms had decreased in intensity and could now be safely managed in a lower level of care." ECF No. 76-2 at 9. The court is unable to conclude that these reasons, which were clearly articulated and addressed Plaintiffs' arguments and evidence, were not reasonable. The court thus has no basis to find Defendants' post-remand denials to be arbitrary and capricious.

## II. Attorney's Fees

The court finally turns to Plaintiffs' motion for attorney's fees.[3] As the Tenth Circuit has described, "ERISA contains a limited fee-shifting provision in § 1132(g). In relevant part, it states: '[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.'" *Stark v. Reliance Standard Life Ins. Co.*, 142 F.4th 1252, 1258 (10th Cir. 2025). "'A fee claimant need not be a prevailing party to be eligible for an award of attorney's fees and costs under ERISA.' Instead, a district court has the discretion to award fees 'as long as the fee claimant has achieved some degree of success on the merits.'" *Lightfoot v. Principal Life Ins. Co.*, 547 F. App'x 864, 866 (10th Cir. 2013) (unpublished) (citation modified).

District courts may consider five factors in exercising their discretion: "(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Id.* But the Tenth Circuit has also ruled that "under § 1132(g), attorney's fees are unavailable for pre-litigation administrative proceedings." *Stark*, 142 F.4th at 1258.

The court exercises its discretion to award attorney's fees to Plaintiffs for both the pre-remand and post-remand litigation. Here, Plaintiffs initially prevailed on summary judgment, achieving success on the merits based on Defendants' refusal to engage in meaningful dialogue

---

[3] Plaintiffs' motion for summary judgment (entitled a "Renewed Motion for Benefits, Attorney Fees, Prejudgment Interest, and Costs") also contains a request for an award of fees, interest, and costs.

and a full and fair review with Plaintiffs as required by ERISA. The current proceedings continue to reflect that procedural history, required only because of Defendants' prior arbitrary and capricious conduct. The court also finds that an award of attorney's fees would serve an important deterrence function with respect to the ERISA process. Requiring plan administrators to pay attorney's fees after engaging in violations of the ERISA process, even when later rectifying those issues post-remand, will incentivize plan administrators to engage in a full and fair review in the first instance.

The court therefore GRANTS Defendants' motion for summary judgment and DENIES IN PART Plaintiffs' motion.

## CONCLUSION

For the above reasons, the court hereby ORDERS:

1. Defendants' motion for summary judgment is GRANTED. ECF No. 77.
2. Plaintiffs' "Renewed Motion for Benefits, Attorney Fees, Prejudgment Interest, and Costs" is DENIED in part and GRANTED in part. ECF No. 68. Plaintiffs are not awarded benefits but are awarded attorney's fees and costs. Plaintiffs may submit their claim for fees and costs in a separate motion, which should include a fee affidavit.

Signed August 20, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge